ROSARIO PERETORE, Respondent, *v.* PENNSYLVANIA RAILROAD COMPANY, Appellant.

First Department, July 1, 1954.

*David J. Mountain, Jr.,* of counsel (*Conboy, Hewitt, O'Brien & Boardman,* attorneys), for appellant.

*Jacob Zane Hoffman* of counsel (*Zinbarg & Carroll* with him on the brief; *Nazareno Gullo,* attorney), for respondent.

BERGAN, J. Plaintiff has judgment against the defendant railroad company upon a cause of action based on an injury sustained when walking through an automatic electric door in Pennsylvania Station. The theory of recovery is that the door closed on the plaintiff as he was walking in a normal manner. We address ourselves mainly to the problem whether the decision for the plaintiff on which the judgment rests is favored by the weight of evidence.

Plaintiff testified he was walking easterly in the station from the train shed to the waiting room. There were at that point eight electrically controlled doors, four designed for use in the direction plaintiff was walking, and four for use the other way. He observed that " many people " were using the doors; that a man was walking in front of him; the door had opened; and that when plaintiff " reached the door, just about at the threshold " the door shut and hit him.

There is no suggestion in the record that any of the crowd using the door at that time had any difficulty in passing through or that the man walking in front of the plaintiff experienced any trouble with the door; nor is there any proof whatever of a failure of the door previously or of any deviation from regular function either noticed or reported in its operation.

The doors were tested in routine check on the morning of the day of the accident and were found to have been operating normally; and a few minutes after the accident a railroad policeman to whom plaintiff reported his experience checked the operation of the doors by walking through them and found them operating normally. The policeman tested each door twice. He described how he did this by stating that he walked '' right through ''. The plaintiff described his own course: '' I just walked straight through ''.

The plaintiff's case is beset by some inherent physical difficulties. In the course in which plaintiff was moving through it, the door would open ahead of him and in the same direction in which the user was walking under the propulsion of an electrically controlled mechanism. It would swing from hinges on his left. In swinging back to a closed position, the smallest part of the arc described by the door would be on the plaintiff's left side. This movement along the arc would, of course, become progressively smaller toward the hinge.

The place where plaintiff testified the door struck him was '' when I reached the door, just about at the threshold ''. But if plaintiff had been using the door in the right direction it would have been at this point, i.e., '' just about at the threshold '' that the door would have become fully shut, if the direction of its movement in relation to persons using it is kept clearly in mind. At that time the door would have presented frontally to the plaintiff a broad flat surface.

His description of the happening is not easy to fit consistently into the physical facts thus laid out. '' The door hit me over the left eye '' he testified. It was noticed that he was bleeding from the left eyebrow. He received, he said, '' two stitches '' at the hospital for the cut. Spectacles which he wore were not broken. He testified that he was knocked down, but he is very clear on the point that no injury came from the fall and that the cut was inflicted solely by contact with the door.

To have caused such a cut over the eye as to require stitches to close would seem to have required a more sharply localized point of contact than the flat surface of a closing door at the point of the threshold. This specifically localized cut was the sole injury. We thus find difficulty in visualizing this as an actual occurrence in terms of physical sequence and consequence.

Plaintiff was the only witness offered or suggested as having seen this perplexing contact. When he was asked to throw further light on this in an examination before trial he said he did not know exactly what portion of the door came in contact

with the point over his eye. " I imagine what could possibly hit me was the corner of the door. I can't imagine anything else hitting me." On the trial he said " All I know, the door hit me." He added on the trial that " it must have hit me squarely ".

If the door had been designed to open in the direction opposite that in which plaintiff was walking so that an edge of it confronted him, or if, as the argument of counsel suggests from the manner of the occurrence, plaintiff had mistaken an exit for an entrance and had walked into the edge of a door moving toward him and confronting him, the localized injury would find an explanation, but it is not readily to be rationalized under the generalities embodied in plaintiff's description.

The electric control was such that when a person broke through a light beam the door would open, and as the user proceeded closer and reached a point about nine inches from the threshold another beam would keep it open until he was through. The electrical and mechanical construction was demonstrated fully in the record and it was established that had plaintiff proceeded " right through " walking in a normal manner following another man, it would not have been possible for the door to have closed on him in the manner described.

It was shown that by walking in a peculiar manner and hugging either rail of the approach, a pedestrian might avoid breaking the light ray that held the door open; but there is no suggestion in the record that this is not standard design for this kind of a door; and in any event the theory of plaintiff's case is that he was using the door by walking in normal fashion.

No mechanical defect has been demonstrated, and no notice of any defect, failure or variation in operation has been shown. The door was in heavy usage at a main point in one of the busiest railroad stations in the world and more than a singular occurrence, the description of which runs heavily against probability, is required to meet the need to establish a case by the usual preponderance of credible evidence.

When we view the whole record of the accident as claimed and the result as demonstrated we feel required to conclude that the decision is against the weight of the evidence and that no showing of negligence on the part of defendant was made out.

The judgment should be reversed and a new trial ordered, with costs to abide the event.

PECK, P. J., DORE, COHN and BOTEIN, JJ., concur.

Judgment unanimously reversed and a new trial ordered, with costs to the appellant to abide the event.